## Borish v. Beck

*Albert M. Hankin,* for plaintiffs.

*William J. O'Brien,* for defendant.

JAMIESON, P. J., September 27, 1967.—Before us is plaintiffs' motion, under Pennsylvania Rule of Civil Procedure 4019 (b), to compel answers to questions asked by plaintiff at the oral examination of defendant. Plaintiffs' claim against defendant is for personal injuries to plaintiff, Ruth Borish, allegedly arising out of defendant's medical malpractice.

At the deposition, defendant was directed by his attorney not to answer certain questions for the reason

that those questions called for the expression of an expert opinion on the part of defendant. Plaintiffs contend, however, that the questions objected to sought only facts within the knowledge of defendant, and, alternatively, if the questions did seek expert opinion, they were, nevertheless, proper.

The second part of plaintiffs' contention, that the questions were proper, even if they sought answers that involved expert opinion, is specifically covered by the Pennsylvania Rules of Civil Procedure. The general rule with regard to the scope of discovery is that ". . . the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation of the trial of the case": Pa. R.C.P. 4007(a).

However, on April 2, 1962, Pa. R.C.P. 4011(f) became effective, providing:

"No discovery or inspection shall be permitted which: . . .

"(f) would require a deponent, whether or not a party, to give an opinion as an expert witness, over his objection".

The clear import of this rule is that plaintiffs are not entitled to have questions answered which seek to elicit from deponent his expert opinion.

Plaintiffs suggest that we should make an exception to rule 4011(f) in a malpractice situation. To do so would run counter to the plain wording of the rule. Nor do plaintiffs offer any reason for concluding that the draftsmen of the rule never contemplated malpractice actions when framing rule 4011(f).

Plaintiffs' other argument is that what is "opinion" in all other areas of the law is also "fact" in a malpractice action. They cite the case of Decker v.

Pohlidal, 22 D. & C. 2d 631 (1960), for the proposition that (page 640):

"The . . . expert witness rule is inapplicable where defendant-doctor, himself an expert, is on trial for malpractice. In such situation no sound distinction can be drawn between questioning defendant-doctor as to fact and questioning him concerning his opinion, since fact and opinion are inextricably intermingled on the fundamental issue as to whether defendant-doctor departed from accepted standards in diagnosing and treating plaintiff's injuries".

Thus, Decker does hold that expert opinion is discoverable in a malpractice action. The basis of the Decker decision, however, was that discovery of defendant's opinions would substantially aid plaintiff in the preparation of his case for trial. See rule 4007(a), supra. The difficulty for plaintiffs is that Decker was decided in 1960, two years before the effective date of rule 4011(f), here applicable: Tejchman v. Wagner, 42 D. & C. 2d 383 (C. P. Allegheny, 1967).

It is true that the basic elements of a plaintiff's case in a malpractice action rest on expert opinion. Plaintiffs must show by expert testimony the medical standard of the community at the time of the injury and that defendant's conduct was a deviation from that standard. However, the elements of a malpractice action had been long established in the law when rule 4011(f) was promulgated. If the draftsmen had wanted to make an exception for malpractice cases, they certainly could have done so. They did not. We cannot say that their failure to do so was an oversight on their part and that, had they thought about it, they would have created an exception.

We conclude, therefore, that those questions which called for the expert opinion of defendant were improper, and with regard to those questions, plaintiffs'

motion is denied. On the other hand, defendant must answer those questions calling for factual information relating to plaintiff, Ruth Borish, and the operation.

Plaintiffs allege that during the course of an operation performed by defendant for the purpose of removing a small growth on plaintiff Ruth Borish's right shoulder near the base of the neck, defendant severed the brachial plexus nerve.

At the deposition, defendant was instructed not to answer the following questions:

1. "What is neurilemmoma, doctor?"

2. "Am I correct in assuming that a neurilemmoma is a tumor on a nerve?"

3. "In fact, is the brachial plexus nerve in this area?"

4. "At that time did you consider it advisable to have any sort of a specialist in consultation with you?"

5. "Did you immediately make a diagnosis as to what the problem was?"

(The answer to question no. 5 was: "Well, I wasn't positive at the time but I had squeamish feelings of what it was.")

6. "What would give you these feelings?"

7. "Is this a result that you could anticipate in this type of an operation?"

8. "Was this a result that could happen in this type of an operation?"

9. "How close to the field in which you were operating was the brachial plexus?"

10. "How close to the field was the brachial plexus?"

11. "Doctor, is her present condition due to the results of this operation?"

12. "Is it part of general surgery to remove a neurilemmoma?"

13. "Is the method in which you performed that operation, doctor, in accordance with the approved practice in this area?"

14. "What are the standards of practice in this community in removing a tumor such as this?"

15. "What are the standards of practice in this community, doctor, for the removal of a neurilemmoma?"

16. "Doctor, assuming that a nerve is injured in surgery, is there a limitation in time in which it can still be repaired?"

17. "At the time Dr. Shenkin operated was it still possible to repair any possible damage to this nerve?"

Questions 1 and 2 call for the definition of medical terms and, therefore, seek to elicit defendant's expert opinion. Medical men often disagree as to these definitions and speak only for themselves when defining a given disease or condition. It is quite possible that defendant would only be giving his own expert opinion as to the definition of a "neurilemmoma".

Questions 3 appears to call for facts based on defendant's observation of the area in which he operated, and is, therefore, unobjectionable. However, if it is intended as a general question, relating to where one would usually find the brachial plexus nerve in the normal person, it calls for expert opinion and would be objectionable.

Questions 4, 5, 6, 9 and 10 deal with facts descriptive of the course of the operation and should be answered.

The remaining questions, 7, 8, 11, 12, 13, 14, 15, 16 and 17, call for expert opinions dealing with the medical standards of the community, the causes of plaintiff Ruth Borish's present physical condition and how that condition might have been averted, and are, therefore, objectionable.

Plaintiffs' motion with respect to questions 3, 4, 5, 6, 9 and 10 is granted. As to questions 1, 2, 7, 8, 11, 12, 13, 14, 15, 16 and 17, the motion is denied.